

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Harold C. Williams, | **09   4823** |
| **Plaintiff,** | |
| v. | **COMPLAINT** |
| The DIRECTV Group, Inc. and Focus Receivables Management, LLC | |
| **Defendants.** | **JURY TRIAL DEMANDED** |

## JURISDICTION

1.  Jurisdiction of this Court over claims against Defendant Focus Receivables Management, LLC (hereinafter "Defendant Focus") arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1692k(d).

2.  Jurisdiction of this Court over claims against Defendant The DIRECTV Group, Inc. (hereinafter "Defendant DIRECTV") arises under 28 U.S.C. § 1367.

3.  This action arises out of Defendant Focus' violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") in its illegal efforts to collect a consumer debt, and out of Defendant DIRECTV's violations of the Pennsylvania Fair Credit Extension Uniformity Act 73 P.S.§ 2270 et seq. ("FCEUA").

4.  Venue is proper in this District because the acts and transactions occurred here, Plaintiff resides here, and Defendants transact business here.

## PARTIES

5.   Plaintiff Harold Williams is a natural person who resides in the City of Philadelphia, County of Philadelphia, State of Pennsylvania, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3) and 73 P.S.§ 2270.3.

6.   Defendant Focus Receivables Management, LLC (hereinafter "Defendant Focus") is a Georgia corporation and a collection agency operating from an address of 1130 Northchase Parkway, Suite 150, Marietta, Georgia 30067 and is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

7.   Defendant The DIRECTV Group, Inc. (hereinafter "Defendant DIRECTV") is a California corporation providing satellite TV services and operating from an address of 2230 E. Imperial Highway, El Segundo, CA 90245 and is a "creditor" as that term is defined by 73 P.S.§ 2270.3.

## FACTUAL ALLEGATIONS

8.   On or around September 2008, Plaintiff contacted Defendant DIRECTV about its satellite TV services, and within a week Defendant DIRECTV installed its equipment in Plaintiff's home and Plaintiff then began receiving DIRECTV television services in his home.

9.   At no time before or after the installation did Plaintiff ever sign any contract with Defendant DIRECTV.

10.   At no time before or after the installation did Defendant DIRECTV or a representative of DIRECTV discuss with Plaintiff the existence of a period of time during which he could not terminate Defendant DIRECTV's services or a

termination fee that would accrue if Plaintiff terminated Defendant DIRECTV's services before such period of time expired.

11.  Over the next approximately four months after installation, Plaintiff received television signal in his home only about 25% of the time, and he frequently had to call Defendant DIRECTV to enlist its assistance in re-establishing his signal.

12.  Despite the grave shortcomings in the reception, Plaintiff timely paid his monthly bill from Defendant DIRECTV for each month during which he attempted to use its television service.

### First Phone Call with Defendant DIRECTV

13.  Finally, in or about January 2009, upon losing his television signal yet again, Plaintiff called Defendant DIRECTV and spoke with a representative of Defendant DIRECTV.

14.  Plaintiff informed the Defendant DIRECTV representative that because of the horrible television service, he was canceling his DIRECTV service.

15.  The Defendant DIRECTV representative stated that Plaintiff could not cancel his service because he had signed a two-year contract that could not be broken.

16.  Plaintiff stated that he had never signed any contract with Defendant DIRECTV and stated that he would be switching to Comcast cable because of the serious problems with Defendant DIRECTV's lack of signal in his home.

17.  Plaintiff insisted that DIRECTV agree to cancel his service and to cease charging him for services.

18. The Defendant DIRECTV representative reiterated that Plaintiff could not legally cancel his service with Defendant DIRECTV due to the existence of a two-year contract.

19. Defendant DIRECTV's representative further stated that Defendant DIRECTV had Plaintiff's credit card "on file" and that if Plaintiff continued insisting on cancelling his service, Defendant DIRECTV would immediately charge Plaintiff's credit card at one time for all 19 months remaining on the two-year contract.

20. Plaintiff protested that Defendant DIRECTV should not be allowed to charge his credit card for any amount of money since Plaintiff had never signed any paperwork with Defendant DIRECTV and had never heard anything about a two-year service term or about any early termination fee.

21. Defendant DIRECTV's representative replied that Defendant DIRECTV did not need to have anything in writing to have the authority to charge Plaintiff's credit card for the remaining months because Plaintiff's contract with Defendant DIRECTV was verbal.

22. Plaintiff reiterated that he was cancelling the service.

23. Defendant DIRECTV's representative stated that he would send Plaintiff the cardboard boxes in which he could return Defendant DIRECTV's equipment, but that returning the boxes would not affect Plaintiff's obligations under the contract and therefore Defendant DIRECTV would charge Plaintiff's credit card for the remaining 19 months on that contract.

24.   The 19 months of monthly payments allegedly owed to Defendant DIRECTV from Plaintiff instantly upon cancellation constitutes a "debt," as defined by 73 P.S.§ 2270.3.

25.   As soon as the conversation ended, Plaintiff called his credit card company and cancelled the credit card so that Defendant DIRECTV would not be able to follow through on the Defendant DIRECTV representative's threat to charge 19 months of alleged debt to the card at once.

26.   Within a week or so of the phone conversation described above, cardboard boxes arrived from Defendant DIRECTV, and Plaintiff promptly returned in them all of Defendant DIRECTV's equipment and has never since utilized any service of Defendant DIRECTV.

27.   As a direct and proximate result of this abusive conversation with the Defendant DIRECTV representative, Plaintiff, who was home with his year-old son on his lone weekly day off from work, felt extremely anxious and was unable to enjoy his time with his child.

28.   As a direct and proximate result of this abusive conversation with the Defendant DIRECTV representative, Plaintiff felt forced to frantically call his credit card company to cancel his credit card.

29.   This contact between the Defendant DIRECTV's representative and Plaintiff was a collection communication in violation of numerous and multiple provisions of the Pennsylvania FCEUA, including but not limited to 73 P.S.§ 2270.4(b)(4),

2270.4(b)(5)(ii), 2270.4(b)(5)(x), 2270.4(b)(6), and 2270.4(b)(6)(i), amongst others.

### First Call from Defendant Focus

30. Sometime between the January 2009 call from Defendant DIRECTV and August 2009, an alleged debt allegedly owed by Plaintiff to Defendant DIRECTV was consigned, placed or otherwise transferred to Defendant Focus for collection from Plaintiff, when thereafter Plaintiff started receiving collection communications from Defendants in an attempt to collect this debt.

31. At some time in the middle of August 2009, Plaintiff received a call at his home from a representative of Defendant Focus.

32. The representative began the conversation by asking if she was speaking to Plaintiff.

33. Plaintiff replied that she was and asked with whom he was speaking.

34. The Defendant Focus representative stated, "Does it matter?"

35. When Plaintiff replied that it did matter, the representative stated that Plaintiff owed $340 to Defendant DIRECTV.

36. Plaintiff responded that he had paid Defendant DIRECTV for all the months during which he had used their service, and he further explained that he had returned Defendant DIRECTV's equipment and had properly cancelled its service.

37. The Defendant Focus representative stated that the money was owed not for service but as a fee for Plaintiff's deciding to opt out early from his contract with Defendant DIRECTV.

38. Plaintiff explained that he had never had a contract with Defendant DIRECTV and that he had had no choice but to cancel the service because most of the time he was paying for Defendant DIRECTV services, he had not gotten any television signal in his home.

39. Plaintiff asked the Defendant Focus representative who in the world would continue paying a television company every month if, most of the time, that company did not provide television service.

40. The Defendant Focus representative stated that "we" should know what "we" want before "we" get into things, and the conversation ended soon thereafter.

41. As a direct and proximate result of this abusive conversation with Defendant Doe, Plaintiff felt sick to his stomach, embarrassed, and belittled.

42. The alleged early termination fee of $340 allegedly owed by Plaintiff to Defendant DIRECTV constitutes a financial obligation that was primarily for personal, family or household purposes and that allegedly went into default for late payment, and it is therefore an alleged "debt" as that term is defined by 15 U.S.C. § 1692a(5).

43. This call on this occasion from Defendant Focus to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692d(6), 1692e, 1692e(2), 1692e(7), 1692e(10), 1692f, and 1692f(1), amongst others.

### Countless Harassing Calls from Defendant Focus

44.   Over the next approximately six weeks, Defendant Focus called Plaintiff on average 6 times per day, 3 times on his home phone and 3 times on his cell phone, at all hours of the day.

45.   As a result of these harassing calls, Plaintiff ceased answering many of the calls to his phone out of fear that the caller was Defendant Focus and because he did not believe that he should have to be subjected to the abusive treatment he had received in his previous communication with a Defendant Focus representative.

46.   As a direct and proximate result of these incessant calls to Plaintiff's home and cell phones, Plaintiff felt under constant attack by Defendant Focus and experienced anxiety and anger every time his phone rang.

47.   These harassing calls placed by Defendant Focus to Plaintiff constitute conduct in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d and 1692d(5) amongst others.

### September 2009 Call from Defendant Focus

48.   At some time in the middle of September 2009, a Defendant Focus representative called Plaintiff.

49.   After Plaintiff confirmed his address, the Defendant Focus representative stated that Defendant owed $340 to Defendant DIRECTV.

50.   Plaintiff informed the Defendant Focus representative that he did not owe this money.

51. The Defendant Focus representative stated that if Plaintiff did not pay his debt immediately, she would inform all of the credit bureaus in the country about the debt.

52. The Defendant Focus representative stated that her reporting the debt to the credit bureaus would destroy Plaintiff's credit and that as a result, Plaintiff would never be able to get any type of loan.

53. The Defendant Focus representative stated that not only would Plaintiff's credit be destroyed but that his children's credit would be destroyed too, such that they would not be able to obtain any student loans when it was time for them to attend college.

54. The Defendant Focus representative continued, stating that unless Plaintiff paid immediately, Defendant Focus would be obligated to report the debt to Plaintiff's employer and Plaintiff would lose his job.

55. Plaintiff responded that he was not going to pay any money until he had had his day in court.

56. The Defendant Focus representative responded by asking Plaintiff why he would be willing to pay an attorney thousands of dollars to represent him in court rather than to just pay the $340 she was demanding.

57. Plaintiff stated that he would rather handle the dispute in a legal way, no matter what it ended up costing him.

58. The Defendant Focus representative then hung up the phone, ending the conversation.

59.   As a direct and proximate result of this abusive conversation, Plaintiff, who had just obtained employment several weeks earlier after having been unemployed for approximately six months and who had obtained United States citizenship in 2004, felt terrified and severely anxious for a prolonged period that he would lose his new job and be forced to leave the country in order to obtain employment abroad, thereby uprooting his wife and two young children.

60.   This call on this occasion with Defendant Doe to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(10), 1692f, and 1692f(1), amongst others.

### Three-way Call with Defendants Focus and DIRECTV

61.   About a week after the call described in paragraphs 48-60 herein, a Defendant Focus representative called Plaintiff.

62.   The Defendant Focus representative stated that Plaintiff owed DIRECTV $340 and asked how much of it he was going to pay today.

63.   Plaintiff responded that he had no intention of paying any of it until he had his day in court.

64.   The Defendant Focus representative asked Plaintiff why he believed he did not owe the money.

65.   Plaintiff explained that the television signal he had received from Defendant DIRECTV in his house was awful and that he had properly cancelled the service and returned all of Defendant DIRECTV's equipment.

66.  The Defendant Focus representative stated that the debt was not a service charge but a fee charged for opting out too early from the contract.

67.  Plaintiff stated that he had never signed any contract with Defendant DIRECTV and that even if he had, Defendant DIRECTV would have been the one violating it by not providing viewable television service.

68.  The Defendant Focus representative stated that she would like for both herself and Plaintiff to speak with Defendant DIRECTV in a three-way phone conversation.

69.  The Defendant Focus representative then called Defendant DIRECTV and connected a Defendant DIRECTV representative into a three-way conversation with Plaintiff.

70.  The Defendant DIRECTV representative informed Plaintiff that two of the pieces of equipment he had returned to Defendant DIRECTV had actually been purchased outright by Plaintiff and did not belong to Defendant DIRECTV.

71.  The Defendant DIRECTV representative then asked whether Plaintiff would pay his debt if Defendant DIRECTV first shipped those two pieces of equipment back to him.

72.  Plaintiff responded that he absolutely would not because he hardly ever got a television signal when he had DIRECTV service and because his refusal to pay had nothing to do with the equipment Defendant DIRECTV was offering to ship back to him.

73. The Defendant DIRECTV representative stated that Plaintiff owed Defendant DIRECTV the early opt-out fee and then promptly hung up the phone, leaving Plaintiff on the phone with the Defendant Focus representative.

74. The Defendant Focus representative then stated that this was a "disputed case," and she too promptly hung up on Plaintiff.

75. As a direct and proximate result of this abusive conversation with Defendant DIRECTV and Defendant Focus, Plaintiff felt sick to his stomach, completely helpless, and under attack by two major corporations that seemed committed to harassing him until he paid them money he did not owe.

76. The early termination fee allegedly owed by Plaintiff to Defendant DIRECTV constitutes a "debt," as defined by both 15 U.S.C. § 1692a(5) and 73 P.S.§ 2270.3.

77. As a direct and proximate result of this abusive conversation with Defendant DIRECTV and Defendant Focus, Plaintiff again stopped answering most calls to his home and cell phones in order to avoid abusive contact with both Defendant Focus and Defendant.

78. As a result, Plaintiff missed the calls from his family in Jamaica attempting to inform Plaintiff that his father had suffered a severe stroke.

79. As a direct and proximate result of this abusive conversation with representatives of Defendant DIRECTV and Defendant Focus, Plaintiff did not learn of his father's stroke until five days after the stroke, and therefore was deprived of the opportunity to be with his father in the days immediately following the family emergency.

80.   This call on this occasion from the Defendant Focus representative constituted a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(10), 1692f, and 1692f(1), amongst others.

81.   The communication between Defendant DIRECTV's representative and Plaintiff during this phone call on this occasion constituted a collection communication in violation of numerous and multiple provisions of the Pennsylvania FCEUA, including but not limited to 73 P.S.§ 2270.4(b)(4), 2270.4(b)(5)(ii), 2270.4(b)(5)(x), 2270.4(b)(6), and 2270.4(b)(6)(i), amongst others.

*October 7, 2009 Call from Defendant Focus*

82.   On October 7, 2009, Plaintiff received in the mail an account summary from Defendant DIRECTV dated September 29, 2009 and indicating that Plaintiff did not owe any money at all to Defendant DIRECTV. See Exhibit 1.

83.   Despite Defendant DIRECTV's admission to Plaintiff that Plaintiff in fact did not owe it any money at all, a Defendant Focus representative called Plaintiff on October 7, 2009 at 3:45 PM while Plaintiff was at work.

84.   The Defendant Focus representative began the conversation by asking Plaintiff whether he was going to pay the money he owed Defendant DIRECTV.

85.   Plaintiff responded that he would not pay any money until he had his day in court.

86.   The Defendant Focus representative replied by asking Plaintiff if he was really willing to pay a lot more money to an attorney rather than just paying a lower amount to him.

87.   Plaintiff replied that he was willing to do this.

88.   The Defendant Focus representative replied that Plaintiff would be hearing from Defendant Focus and promptly hung up the phone.

89.   As a direct and proximate result of this abusive conversation with Defendant Doe, Plaintiff was sick to his stomach and felt extreme frustration.

90.   This call on this occasion with Defendant Doe to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(10), 1692f, and 1692f(1), amongst others.

### *October 12, 2009 Call from Defendant Focus*

91.   On Monday, October 12, 2009 at 11:18 AM, a Defendant Focus representative called Plaintiff.

92.   The Defendant Focus representative opened the conversation by asking Plaintiff if he was going to pay or not.

93.   Plaintiff answered that he was not.

94.   Defendant Focus representative responded by offering him a proposal: that if Plaintiff were to pay half of the amount allegedly owed, Defendant Focus would send the remaining amount back to Defendant DIRECTV as a "disputed amount" about which Plaintiff could work out an agreement with Defendant DIRECTV directly.

95.   Plaintiff replied that he would not pay one dollar until he got his day in court.

96.  As a direct and proximate result of this abusive conversation with Defendant Focus, Plaintiff was sick to his stomach and felt extreme frustration.

97.  This call on this occasion from Defendant Focus to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692c(8), 1692e(10), 1692f, and 1692f(1), amongst others.

### Second Call on October 12, 2009 from Defendant Focus

98.  On Monday, October 12, 2009 at 3:37 PM, a Defendant Focus representative called Plaintiff.

99.  The Defendant Focus representative opened the conversation by asking Plaintiff if he was aware that he owed DIRECTV $340.

100.  Plaintiff responded that he did not owe any money to anyone.

101.  The Defendant Focus representative responded by asking why Plaintiff felt he didn't owe the money.

102.  Plaintiff stated that he had explained why he didn't owe the money to Defendant Focus representatives many times before and did not understand why he had to explain the same exact facts again and again.

103.  Plaintiff explained that there was no contract binding him beyond when he appropriately cancelled the service because it was not working properly.

104.  The Defendant Focus representative stated that Plaintiff had signed a two-year contract with DIRECTV and that he owed the money as a result of canceling it prior to the expiration of two years.

105. Plaintiff asked the Defendant Focus representative if he, the representative, would continue paying monthly cable bills if he wasn't getting television reception from his provider.

106. The Defendant Focus representative ignored Plaintiff's question and stated that if Plaintiff did not pay immediately, his credit would be ruined.

107. The Defendant Focus representative further stated that if Plaintiff did not immediately pay, Defendant Focus would inform all of the credit bureaus in the country about the debt.

108. The Defendant Focus representative stated that he could offer Plaintiff a deal: that if Plaintiff paid him $200, Defendant Focus would stop collecting from him, and the remaining $140 of alleged debt would return to Defendant DIRECTV with whom Plaintiff could deal directly.

109. Plaintiff responded that he was not going to pay any money to either Defendant Focus or Defendant DIRECTV until he had his day in court.

110. As a direct and proximate result of this call on this occasion, Plaintiff felt so frustrated and powerless that he wished he had not cancelled his credit card so he could just go ahead an pay the $340 to make the harassment cease.

111. As a direct and proximate result of this abusive conversation, Plaintiff was sick to his stomach, felt extreme frustration and embarrassment, and again felt terrified that he would lose his employment and would be forced to leave the country to find employment, thereby uprooting his wife and two young children.

112.   This call on this occasion from the Defendant Focus representative to Plaintiff was a collection communication in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1692e(8), 1692e(10), 1692f, and 1692f(1), amongst others.

### *Respondeat Superior Liability*

113.   The acts and omissions of each and every representative of Defendant Focus who were employed as agents by Defendant Focus and who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant Focus.

114.   The acts and omissions by the representatives of Defendant Focus, who were acting as debt collectors, were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant Focus in collecting consumer debts.

115.   By committing these acts and omissions against Plaintiff in their capacity as debt collectors, the representatives of Defendant Focus were motivated to benefit their principal, Defendant Focus.

116.   Defendant Focus is therefore liable to Plaintiffs through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its representatives and its collection employees, including but not limited to violations of the FDCPA, in their attempts to collect this debt from Plaintiff.

117.  The acts and omissions of each and every representative of Defendant DIRECTV who were employed as agents by Defendant DIRECTV and who communicated with Plaintiff as more further described herein, were committed within the time and space limits of their agency relationship with their principal, Defendant DIRECTV.

118.  The acts and omissions by the representatives of Defendant DIRECTV were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant DIRECTV in communicating with customers and perceived debtors of Defendant DIRECTV.

119.  By committing these acts and omissions against Plaintiff in their capacity as agents of the creditor Defendant DIRECTV, the representatives of Defendant DIRECTV were motivated to benefit their principal, Defendant DIRECTV.

120.  Defendant DIRECTV is therefore liable to Plaintiffs through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of state and federal law by its representatives, including but not limited to violations of the Pennsylvania FCEUA, in their attempts to collect this debt from Plaintiff.

### *Summary*

121.  The above-detailed conduct by Defendant Focus of harassing Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above-mentioned provisions of the FDCPA.

122.  The above-detailed conduct by Defendant DIRECTV of harassing Plaintiff in an effort to collect this debt was a violation of numerous and multiple provisions of the

Pennsylvania FCEUA, including but not limited to all of the above-mentioned provisions of the Pennsylvania FCEUA.

123. Plaintiff has suffered actual damages as a result of these illegal collection communications by these Defendants in the form of hopelessness, anger, anxiety, emotional distress, fear, frustration, upset, humiliation, embarrassment, amongst other negative emotions, as well as in the form of being deprived of the opportunity to be with his father immediately after his severe stroke.

## **TRIAL BY JURY**

124. Plaintiff is entitled to and hereby respectfully demands a trial by jury. US Const. amend. 7. Fed.R.Civ.P. 38.

## CAUSES OF ACTION

### COUNT I

### (Defendant Focus Solely)

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 et seq.

125.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

126.   The foregoing intentional and negligent acts and omissions of Defendant Focus constitute numerous and multiple violations of the FDCPA including, but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 et seq.

127.   As a result of Defendant Focus' violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

### COUNT II.

### (Defendant DIRECTV Solely)

## VIOLATIONS OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT

## 73 P.S. § 2270 et seq.

128.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

129.   The foregoing acts and omissions of Defendant DIRECTV and its agents constitute numerous and multiple violations of the Pennsylvania FCEUA including, but not limited to, 73 P.S.§ 2270.4(b)(4), 2270.4(b)(5)(ii), 2270.4(b)(5)(x), 2270.4(b)(6), and 2270.4(b)(6)(i) with respect to Plaintiff.

130.   Pursuant to 73 P.S.§ 2270.5(a), the commission of an unfair or deceptive debt collection act or practice under the Pennsylvania FCEUA constitutes a violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

131.   Pursuant to 73 P.S. § 201-9.2(a) of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Defendant DIRECTV's violations of the Pennsylvania FCEUA entitle Plaintiff to recovery for actual damages or dollars ($100), whichever is greater, with the additional provision that the court may, in its discretion, award up to three times the actual damages sustained, but not less than one hundred dollars ($100); reasonable attorney's fees and costs pursuant to 73 P.S. § 201-9.2(a), from Defendant Asset herein; and any additional relief as the court deems necessary and proper pursuant to 73 P.S. § 201-9.2(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against each and every Defendant:

### COUNT I.

### (Defendant Focus Solely)

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 et seq.

- for an award of actual damages pursuant to 15 U.S.C. § 1692k(a)(1) against Defendant Focus and for Plaintiff;

- for an award of statutory damages of $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A) against Defendant Focus and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) against Defendant Focus and for Plaintiff; and

- for such other and further relief as may be just and proper.

### COUNT II.

### (Defendant DIRECTV Solely)

## VIOLATIONS OF THE FAIR CREDIT EXTENSION UNIFORMITY ACT

### 73 P.S. § 2270 et seq.

- for an award of treble actual damages pursuant to 73 P.S. § 201-9.2(a) against Defendant DIRECTV and for Plaintiff;

- for an award of costs of litigation and reasonable attorney's fees pursuant to 73 P.S. § 201-9.2(a) against Defendant DIRECTV and for Plaintiff; and

- for such other and further relief as may be just and proper.


Respectfully submitted,

Dated: October 15, 2009                     **DOV SACKS, ESQ**

By:  **s/Dov Sacks**
Dov Sacks, Esq.
Attorney I.D.# 206474
Validation of Signature Code: cds8309
3638 N. Broad Street
Philadelphia, PA 19140
Telephone:  (215) 227-2400, ext. 2427
Facsimile: (215) 227-6486
cdsacks@clsphila.org

cds                                         **Attorney for Plaintiff**

## VERIFICATION OF COMPLAINT AND CERTIFICATION

STATE OF PENNSYLVANIA　　)
　　　　　　　　　　　　　　) ss
COUNTY OF PHILADELPHIA　)

Plaintiff Harold Williams, having first been duly sworn and upon oath, deposes and says as follows:

1. I am a Plaintiff in this civil proceeding.
2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information and belief formed after reasonable inquiry.
3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.
4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass any Defendant(s), cause unnecessary delay to any Defendant(s), or create a needless increase in the cost of litigation to any Defendant(s), named in the Complaint.
5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.
6. Each and every exhibit I have provided to my attorneys which has been attached to this Complaint is a true and correct copy of the original.
7. Except for clearly indicated redactions made by my attorneys where appropriate, I have not altered, changed, modified, or fabricated these exhibits, except that some of the attached exhibits may contain some of my own handwritten notations.

_Harold C. Williams_
Harold C. Williams

Subscribed and sworn to before me
this 15th day of October, 2009.

_Esther Alvarez_
Notary Public

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ESTHER ALVAREZ, Notary Public
City of Philadelphia, Phila. County
My Commission Expires Mar. 17, 2010

# EXHIBIT 1

**DIRECTV**

| ACCOUNT NUMBER | DATE DUE | AMOUNT DUE |
|---|---|---|
| 57167817 | No Payment Due | No Payment Due |

**directv.com**
**to view your bill online,**
**or call our**
**Automated Phone System**
**& tell us your reason**
**for calling.**

For a worry-free way to pay each month,
See back of bill for details.

## Summary

**Statement Date:** 09/29/09
*Page 1 of 1 for:*
HAROLD WILLIAMS
**For Service at:**
8605 FAYETTE ST
PHILADELPHIA, PA 19150-1903

| | |
|---|---|
| Previous Balance | 0.00 |
| Payments | 0.00 |
| Current Charges & Fees | 0.00 |
| Adjustments & Credits | 0.00 |
| Taxes | 0.00 |
| **Amount Due** | **$0.00** |

**To contact us call 1-800-531-5000**

## Activity

| Start | End | Description | Amount |
|---|---|---|---|
| | | Previous Balance | 0.00 |
| | | Payment | 0.00 |
| | | **AMOUNT DUE** | **$0.00** |

### Updated Bill

This is an off-cycle bill request. It only shows the activity that posted to your account since your last statement. To see the breakdown of the transaction detail included in your 30-day service period, please refer to the last, full-cycle statement you received. **Important:** Off-cycle transactions print only once. You will not see this detail listed again in your next full-cycle statement, so please keep this updated bill for your records. Thank you.

---

PLEASE FOLD ALONG PERFORATION, DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT

**DIRECTV**

| DATE DUE | ACCOUNT NUMBER | AMOUNT DUE | PAYMENT ENCLOSED |
|---|---|---|---|
| No Payment Due | 57167817 | No Payment Due | |

☐ Note my change of address on reverse side.
**DO NOT WRITE OTHER COMMENTS ON THIS FORM**

(215) 753-2484

To sign up for Auto Pay Service, See Reverse.

Do not send cash. Make check or money order payable to:

#BWNHPWR
#PEGAFGHAG6#
AT 01 018597 73014B 71 A**3DGT
HAROLD WILLIAMS
8605 FAYETTE ST
PHILADELPHIA PA 19150-1903

**DIRECTV**
**PO BOX 11732**
**NEWARK NJ 07101-4732**

0000000000000000057167817 6 0028 00000000 00000000 0